IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NORMAN THOMPSON, ) | Civil No.: 1:11-cv-03100-JE |
| ) | |
| Plaintiff, ) | FINDINGS AND |
| ) | RECOMMENDATION |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Philip Studenberg
200 Pine Street
Klamath Falls, OR 97601

      Attorney for Plaintiff

S. Amanda Marshall, U.S. Attorney
Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204

Gerald J. Hill
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

      Attorneys for Defendants

FINDINGS AND RECOMMENDATION – 1

JELDERKS, Magistrate Judge:

Plaintiff  Norman Thompson brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a  final decision of the Commissioner of Social Security (the Commissioner) denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits (SSI) under the Social Security Act (the Act).

For the reasons set out below, the Commissioner's decision should be affirmed.


**<u>Procedural Background</u>**

Plaintiff filed an application for SSI on February 25, 2008.  Plaintiff also filed an application for a period of disability and DIB on March 11, 2008.  Both applications alleged that he had been disabled since September 1, 2005.

After his claims were denied initially and on reconsideration, Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). On October 5, 2009, a hearing was held before ALJ Michael McShane.  Plaintiff  and Francene Geers, a Vocational Expert (VE) testified at the hearing.  Betty Feir, Ph.D., a medical expert (ME), appeared by phone.  ALJ McShane determined that consultative psychological and physical evaluations were necessary to complete the record.  On April 26, 2010, after reports of the consultative evaluations had been received, a supplemental hearing was held.  Plaintiff and VE Geers testified at this hearing.

In a decision dated May 11, 2010, ALJ McShane found that Plaintiff was not disabled within the meaning of the Act.  That decision became the final decision of the Commissioner on June 23, 2011, when the Appeals Council denied Plaintiff's request for review.  In the present action, Plaintiff seeks review of the Commissioner's decision.


FINDINGS AND RECOMMENDATION – 2

**Factual Background**

Plaintiff was born December 26, 1977.  He was 27 years old at the time of the alleged onset of disability in 2005 and 32 years old at the time of the supplementary hearing in 2010.  He earned a GED in 1999.  Plaintiff completed a vocational training program for the forest service through Job Corps and has past relevant work as a dishwasher.

**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.

 If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet

or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

## **Medical Record**

Relevant portions of the medical record will be addressed in the discussion below.

**Hearing Testimony**

1. **Plaintiff**

Plaintiff testified as follows at the hearings before the ALJ:

Plaintiff has not worked since 2005 and at the time of the first hearing had been homeless for six years.  He has been excluded from shelters but at the time of the second hearing was occasionally able to stay at friends' homes.  Plaintiff walks and rides a bike to get to places in town.

Plaintiff's last job was as a dishwasher for a hotel during which time he was taking Lexapro and Risperdal.  That combination of medications gave him the best feeling of control he had ever experienced.  However, the medication assistance he received through a low income program was terminated, he was cut off from his medications and subsequently lost his job because he had a panic attack.

Plaintiff suffers anxiety when around large groups of people and has difficulty remembering things.  Plaintiff has problems with his teeth, cardiac arrhythmia, pain in his kidneys, low back pain, "floaters" in his eyes and is "almost legally blind."  He had been taking Seroquel but at the time of the first hearing had not had any in a little over a week.  At the time of the second hearing, Plaintiff had obtained coverage under the Oregon Health Plan and was again taking Seroquel, which helps him concentrate and sleep and reduces his shaking, the voices in his head and the ringing sound in his ears.

Plaintiff uses marijuana and has used methamphetamine in the past.  He also smokes cigarettes and "has a beer once in a while."  He has been in jail several times on charges ranging from disorderly conduct and failure to appear to burglary.  Plaintiff has admitted himself or been

brought in by law enforcement to "Two North"[1] for mental health treatment on a number of

occasions.  He has been hospitalized for as many as two to three days but has also been "kicked

out" of the hospital when staff thought he was only looking for a place to stay.

Plaintiff receives food stamps and at the time of the second hearing had been doing some

lawn mowing jobs and was trying to help with a community garden on a volunteer basis.

## 2.  **Medical Expert**

Dr. Betty Feir, a non-examining clinical psychologist, testified as a medical expert at

Plaintiff's first hearing.  She testified that the medical evidence reflected an extensive history of

substance abuse and dependence and diagnoses of depression, adjustment disorder with

depressed moods and personality disorder with dependent and anti-social traits.  Dr. Feir opined

that drugs were "material" to Plaintiff's emotional problems and that the record would also

support diagnoses of depression, somatoform disorder and personality disorder.  Dr. Feir testified

she found that Plaintiff had moderate problems with his activities of daily living, social

functioning and concentration, persistence and pace.  She opined that she did not see any real

episodes of decompensation of extended duration and that Plaintiff was someone who "always

seems to land on his feet."

Dr. Feir also opined that Plaintiff's conditions would limit him to work that did not

require interaction with co-workers or other people and would only involve simple tasks.  She

testified that Plaintiff may do well with forced pace work or assembly line pace if he could

concentrate on what he was doing but that he would not work well with close supervision.

---

[1] The record indicates that "Two North" is the psychiatric wing of Rogue Valley Medical Center.

FINDINGS AND RECOMMENDATION – 6

3. **Vocational Expert**

**First Hearing**

At Plaintiff's first hearing the ALJ posed a vocational hypothetical describing an individual with Plaintiff's age, education and vocational background who could lift 25 pounds frequently and 50 pounds occasionally; could sit, stand, and walk (each) for 6 hours in an 8 hour work day; could not climb ropes, ladders, or scaffolds or work at unprotected heights or around dangerous moving machinery; was limited to simple, one to three step tasks that are routine and repetitive without frequent changes in duties; and was limited to no close contact with co-workers, no close supervision and no forced pace or assembly line pace work.

The VE testified that such an individual could not perform any of Plaintiff's past relevant work, but could work as a cleaner, hand packager or laundry worker.

The ALJ then modified the hypothetical by imposing a limitation to lifting and carrying 10 pounds frequently and 20 pounds occasionally. The VE testified that the described individual could work as a room cleaner, laundry sorter or an electronics parts cleaner.

The ALJ posed a third hypothetical asking the VE to assume a person of the same age, education and vocational history as Plaintiff and to further assume that the testimony given by Plaintiff at the hearing was found to be completely credible. The VE testified that such an individual would neither be able to do Plaintiff's past relevant work nor perform any jobs in the nation or region at any exertion or skill level.

Plaintiff's counsel asked the VE whether an individual who missed more than two days of work a month "for whatever reason" would be able to sustain employment. The VE testified that such an individual was precluded from employment.

**Second Hearing**

At Plaintiff's second hearing, the ALJ posed the same vocational hypotheticals from Plaintiff's first hearing. In response to the first hypothetical, the VE testified that such an individual could not perform any of Plaintiff's past relevant work, but could work as a cleaner, a packager or a folder. In response to the second hypothetical, the VE testified that such an individual could work as a folder, a wire worker, or as a hand packager. In response to the third hypothetical, the VE again testified that such an individual would be precluded from both Plaintiff's past relevant work and from any other work at any exertional or skill level.

Counsel for Plaintiff asked the VE if an individual who demonstrated erratic behavior or who had moderate difficulties in concentration, persistence and pace would have difficulty maintaining employment. The VE testified that a person demonstrating behavior that was of concern to employers would not be kept on as an employee and that the more limitations an individual had the less likely they would be able to perform in their job.

**ALJ's Decision**

In his decision dated May 11, 2010, ALJ McShane found that Plaintiff met the requirements for insured status through March 31, 2006.

At the first step of the disability assessment process, he found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability date of September 1, 2005.

At the second step, the ALJ found that Plaintiff had the following "severe" impairments: depressive disorder, personality disorder, drug and alcohol abuse, and somatoform disorder.

At the third step of his assessment, the ALJ found that these impairments, alone or in combination, did not meet or equal a presumptively disabling listed impairment set out in the listings, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Before proceeding to the fourth step, the ALJ evaluated Plaintiff's residual functional capacity (RFC).  He found that Plaintiff retained the functional capacity to perform medium exertional level work, except that he could not climb ladders, ropes or scaffolds, or work at unprotected heights or around dangerous moving machinery.  In addition, the ALJ found Plaintiff  was limited to work involving no contact with the general public; no close contact with co-workers or close supervision; involving simple, one to three step procedures "that are routine and repetitive without frequent changes in duties;" and requiring "no forced pace or assembly-line pace."  In evaluating Plaintiff's RFC, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with these conclusions.

At the fourth step, the ALJ found that Plaintiff could not perform any of his past relevant work.

At the fifth step, based upon the testimony of the VE, the ALJ found that Plaintiff could perform other work that exists in significant numbers in the national economy.  He cited cleaner, packager, and folder as examples of such work.

Based upon his conclusion that Plaintiff could perform such work, the ALJ found that Plaintiff was not disabled within the meaning of the Act.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

## **Discussion**

Plaintiff has provided a one and a half page memorandum in support of his petition.[2] Plaintiff does not lay out his arguments in any depth and provides little in the way of supporting

---

[2] Plaintiff did not file a Reply.

FINDINGS AND RECOMMENDATION – 10

authority.  In the discussion below I address the arguments that Plaintiff's brief synopsis appears to set forth.

Plaintiff contends that the ALJ erred in finding that he could perform work that exists in significant numbers in the national economy and in finding that his mental impairments did not meet or equal a presumptively disabling impairment set out in the listings.

1. **Conclusion that Plaintiff Could Perform Work in the National Economy**

Plaintiff contends that the ALJ erred in concluding that Plaintiff could perform the representative occupations of cleaner, packager and folder.  Plaintiff argues that his RFC and the vocational hypotheticals posed to the VE included a restriction of "no forced pace or assembly-type jobs," but that every representative occupation listed by the VE and, subsequently, the ALJ as one which the Plaintiff could perform has forced pace requirements.  Plaintiff further argues, without citation, that the Dictionary of Occupational Titles (DOT) "specifies that no unskilled labor is available without forced pace or assembly type" work and therefore it was error for the ALJ to find that jobs exist in significant numbers in the national economy that Plaintiff could perform.

Plaintiff's arguments are without merit.  First, as the Commissioner correctly notes, the restriction included in both Plaintiff's RFC and in the hypotheticals posed to the VE was to work that requires "no forced pace or assembly-line *pace*."(emphasis added).  The DOT sections covering the three representative occupations provided by the VE and relied upon by the ALJ in reaching his finding make no reference to any forced pace or assembly-line pace requirement.  In addition, Plaintiff has not cited, nor have I found, any part of the DOT that "specifies that no unskilled labor is available" without such a requirement.

FINDINGS AND RECOMMENDATION – 11

Here, the ALJ's reliance on the VE's testimony that Plaintiff could perform the requirements of the cleaner, packager and folder occupations was justified and his conclusion that there exist a significant number of jobs in the national economy that Plaintiff can perform was supported by substantial evidence.  See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005)(ALJ is entitled to rely on testimony provided by a VE whose recognized expertise provides the necessary foundation for his or her testimony).

2. **Conclusion the Plaintiff's Mental Impairments Did Not Meet or Equal a Listed Impairment**

Plaintiff contends that the ALJ erred in concluding that Plaintiff did not meet the requirements for finding disability under Listings12.04 (Affective Disorders), 12.07 (Somatoform Disorders), 12.08 (Personality Disorders), and 12.09(Substance Addiction Disorders) because Plaintiff experienced repeated episodes of decompensation.

The requirements of Listing 12.04 are satisfied if a claimant meets the requirements of both Paragraphs A and B, or the requirements of Paragraph C are satisfied.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.  The requirements of Listings 12.07 and 12.08 are satisfied if a claimant meets the requirements of both Paragraphs A and B. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§12.07, 12.08  Listing 12.09 is a "reference listing" and only indicates "which of the other listed mental or physical impairments must be used to evaluate the behavioral or physical changes resulting from regular use of addictive substances." 20 C.F.R.  Pt. 404, Subpt. P, App. 1 § 12.00(A).  Listing 12.09 requirements are met if the required level of severity is met for any of the listed disorders in Listing 12.09.[3]  Therefore, in this case, the requirements of 12.04 or 12.08 would first need to be met before Plaintiff would meet the requirements of 12.09.

---

[3] "Substance Addiction Disorders: Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system. The required level of severity for these disorders is met when the requirements in any of the following (A through I) are satisfied. . . . B. Depressive syndrome. Evaluate under 12.04. D. Personality disorders. Evaluate under 12.08." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.09

The only apparent issue Plaintiff takes with the ALJ's findings as to his mental impairments satisfying the above criteria is whether substantial evidence supported the ALJ's conclusion that Plaintiff had not experienced repeated episodes of decompensation of extended duration. "Repeated episodes of decompensation, each of extended duration" is one of the criteria used to determine whether an individual meets the requirements of Paragraph B and, in the case of Listing 12.04, it is also a criteria considered for purposes of Paragraph C. As used in the Listings, this term means

> exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. . . . Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

> The term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4)

Plaintiff contends that he "is basically a homeless person living on the streets due to his mental illness" and has had "repeated periods of decompensation, such as living on the streets and being removed from shelters." Without further argument or any reference to the record or to legal authority, Plaintiff asserts that the ALJ erred in concluding that the "listings were not met."

After careful review of the ALJ's decision and the record, I conclude that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments did not singly, or in combination, meet or medically equal the requirements for finding disability under Listings 12.04, 12.07, 12.08 or 12.09. The ALJ cited the correct legal standard for determining whether

Plaintiff's mental impairments met or equaled the criteria for the Listings at issue and explained his assessment of the level of difficulty Plaintiff experienced in the relevant areas. The ALJ considered whether both Paragraph B and C criteria were satisfied. Citing Dr. Feir's testimony, Plaintiff's testimony and relevant portions of the medical record, the ALJ concluded that Plaintiff had moderate restrictions in activities of daily living and moderate difficulties in social functioning and in concentration, persistence or pace. He addressed these impairments more thoroughly later in his decision. As discussed below, he concluded that Plaintiff had experienced no extended episodes of decompensation and, for purposes of Paragraph C, concluded that there was insufficient evidence of decompensation, marginal adjustment or inability to function.

The ALJ's conclusion that Plaintiff had experienced no extended episodes of decompensation was also supported by substantial evidence. The ALJ correctly noted that the record showed that, although Plaintiff repeatedly presented to the emergency room, his hospitalizations were brief and did not constitute episodes of extended duration in accord with the regulations. As the Commissioner correctly notes, Plaintiff's homelessness is not relevant to the regulatory definition of "episodes of decompensation." See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). The ALJ, correctly, did not address Plaintiff's homelessness and removal from shelters in concluding that Plaintiff had not experienced any episodes of decompensation. However, he did address those issues in determining that Plaintiff suffered moderate restrictions in activities of daily living, noting that, despite his housing situation, Plaintiff was able to walk and bike to places, shop for groceries with food stamps and perform other activities of daily living when facilities were available. Plaintiff points to no evidence in the record or any legal authority, and the court is unaware of any, which would support his contention that he

FINDINGS AND RECOMMENDATION – 14

experienced extended episodes of decompensation or that his homelessness and removal from

shelters constituted such episodes.

Plaintiff has not established that the ALJ erred in concluding that he had not experienced

repeated episodes of decompensation, each of extended duration, or that his mental impairments

did not meet or equal a presumptively disabling impairment defined in the Listings.


## Conclusion

For the reasons set out above, a judgment should be entered AFFIRMING the decision of

the Commissioner and DISMISSING this action with prejudice.


## Scheduling Order

This Findings and Recommendation will be referred to a district judge.  Objections,

if any, are due November 30, 2012.  If no objections are filed, then the Findings and

Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with

a copy of the objections.  When the response is due or filed, whichever date is earlier, the

Findings and Recommendation will go under advisement.

DATED this 13th day of November, 2012.


    /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge


FINDINGS AND RECOMMENDATION – 15